UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NDUWIMANA APOLLINAIRE,

                          Petitioner,                  Case # 19-CV-6285-FPG

v.

                                                DECISION AND ORDER

WILLIAM BARR, et al.,

                          Respondents.

## INTRODUCTION

*Pro se* Petitioner Nduwimana Apollinaire brought a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention at the Buffalo Federal Detention Facility. ECF No. 1. On June 25, 2019, this Court granted the petition in part and ordered Respondent Jeffrey Searls to hold a bond hearing for Petitioner, at which the government would bear the burden of proving "by clear and convincing evidence that Petitioner's continued detention is justified based on risk of flight or danger to the community." ECF No. 7 at 5. On July 8, 2019, Immigration Judge Mary C. Baumgarten held the ordered hearing. She found that the government had sustained its burden of proving that continued detention is justified based on Petitioner's substantial risk of flight. ECF No. 17 at 56.

Petitioner has now filed a motion requesting his immediate release on the ground that the hearing did not, in fact, comply with the Court's order. ECF No. 10. The government opposes the motion. ECF No. 17. For the reasons that follow, Petitioner's motion is DENIED.

## BACKGROUND

Immigration authorities have detained Petitioner since May 2017. In August 2017, after a bond hearing, an immigration judge granted Petitioner bond in the amount of $12,000. ECF No.

5-3 at 19. Petitioner claims that he could not afford that amount, and therefore he has remained in immigration custody since that date. ECF No. 10 at 5.

As a result of the Court's June 25, 2019 Decision and Order, immigration authorities held a new bond hearing for Petitioner on July 8, 2019. At the hearing, the government took the position that detention remained justified because Petitioner is a flight risk. ECF No. 17 at 33. It did not argue that Petitioner presented a danger to the community. *Id.* at 51. The crux of the government's argument was that Petitioner entered the United States "by committing fraud." *Id.* at 36. Specifically, while he obtained a visa on the claim that he was attending a religious conference in Washington D.C., once he arrived, he absconded to Canada in an attempt to seek asylum. And because he now has a final order of removal—albeit one which is under review by the Second Circuit—Petitioner presents a greater flight risk now than he did at the outset of his detention.

Petitioner, who was represented by counsel at the bond hearing, argued that he is not a flight risk. His counsel noted that since his detention began he has "been able to reach out and establish community supports." *Id.* at 39. The record contains letters from several churches, individuals, and community organizations in which they volunteer to provide housing and other supports to Petitioner if he is released. *See, e.g.*, ECF No. 10 at 17-33. Petitioner's counsel asserted that Petitioner's visa fraud is excusable given his circumstances. She cited *Lin v. Gonzales*, 445 F.3d 127 (2d Cir. 2006), for the proposition that "[p]eople attempting to escape persecution reasonably use all means at their disposal to do so." *Lin*, 445 F.3d at 133. She also contended that Petitioner's pending appeal gave him "every incentive" to adhere to conditions of supervision. ECF No. 17 at 44. Finally, counsel noted that Petitioner has no criminal record or missed court dates.

Immigration Judge Baumgarten found that the government had met its burden of proving by clear and convincing evidence that Petitioner's detention is justified based on a substantial risk

of flight. *Id.* at 56. She considered the facts that Petitioner: (1) has no direct family ties in the United States; (2) is subject to an administratively final order of removal; (3) lied by using a religious conference as cover to obtain a visa and seek asylum; and (4) fled to Canada soon after entering the United States. Immigration Judge Baumgarten was not persuaded that the support offered by various organizations and individuals would mitigate the risk of flight. She noted that there were some inconsistencies between the letters and that Petitioner was "essentially a stranger" to many of those who offered support, and thus they did not have the "personal experience to vouch for his ability to comply" with the conditions of release. *Id.* at 60. Immigration Judge Baumgarten was particularly skeptical of Petitioner's assertion that he would not be a flight risk because he had two local religious communities willing to provide support and housing, given that Petitioner had previously used his religious faith as a cover to obtain a visa. *See id.* at 62. For these reasons, she denied Petitioner's request for bond. *See id.* at 64-65.

On July 19, 2019, Petitioner filed the present motion for relief.

## DISCUSSION

Petitioner argues that Immigration Judge Baumgarten did not abide by the Court's order requiring the government to bear the burden of proving by clear and convincing evidence that continued detention is justified. Petitioner notes that a different immigration judge had previously granted him bond despite his visa fraud, and he asserts that the government presented no new evidence at the July 8, 2019 hearing to support the conclusion that he is a flight risk. Having reviewed the record and the parties' submissions, the Court disagrees.

Before reaching the merits of Petitioner's motion, however, the Court must address two preliminary matters. First, on August 23, 2019, Respondent appealed the Court's June 25, 2019 Decision and Order. *See* ECF No. 18. This raises a question concerning the Court's continuing jurisdiction. "It is well-settled that the filing of a notice of appeal confers jurisdiction on the court

of appeals and divests the district court of control over those aspects of the case involved in the appeal." *Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 208 F. Supp. 2d 387, 392 (E.D.N.Y. 2002) (internal quotation marks omitted). "The divestiture of jurisdiction rule is, however, not a per se rule." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996). One exception is that, absent a stay, a district court retains jurisdiction to enforce its orders and judgments despite an appeal. *See, e.g.*, *City of New York v. Venkataram*, No. 06 Civ. 6578, 2012 WL 2921876, at *3 (S.D.N.Y. July 18, 2012) (collecting cases). This includes orders granting habeas relief. *See Enoh v. Sessions*, No. 16-CV-85, 2017 WL 2080278, at *4-5 (W.D.N.Y. May 15, 2017). Therefore, the notice of appeal does not divest this Court of jurisdiction to review compliance with and, if necessary, enforce its previous order. *See id.*

Second, Respondent argues that 8 U.S.C. § 1226(e) divests this Court of jurisdiction to review Immigration Judge Baumgarten's bond determination. That provision states, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien . . . ." 8 U.S.C. § 1226(e). This provision does not bar the Court's review. As an initial matter, Section 1226(e) concerns only "discretionary judgments" pertaining to "the application of *this section*"—that is, Section 1226. *Id.* (emphasis added). The Court is skeptical that the July 2019 bond hearing constitutes a proceeding conducted under Section 1226; rather, it was a court-ordered bond hearing that demanded procedural protections beyond those compelled by the statute itself. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 847-48 (2018); *Darko v. Sessions*, 342 F. Supp. 3d 429, 434-35 (S.D.N.Y. 2018). In any case, Section 1226(e) does not deprive a court of jurisdiction over constitutional and statutory challenges to detention. *Enoh*, 2017 WL 2080278, at *5; *see also Jennings*, 138 S. Ct. at 841 ("§ 1226(e) does not preclude challenges to the statutory framework that permits the alien's detention without

4

bail." (internal quotation marks and brackets omitted)). Thus, even if it were otherwise applicable, the statute presents no obstacle to review because the Court is not reviewing an immigration judge's discretionary judgment, but whether its order was followed—*i.e.*, "whether [Petitioner] received the due process to which he was entitled." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 236 (W.D.N.Y. 2019).

Turning to the merits, it is important to emphasize that the Court's task is narrow: it is to determine whether Respondent complied with the Decision and Order, not to review the hearing evidence *de novo* and determine whether Petitioner is in fact a flight risk. *See Nguti v. Sessions*, No. 16-CV-6703, 2017 WL 5891328, at *2 (W.D.N.Y. Nov. 29, 2017) (collecting cases). Thus, the question is "whether the immigration judge relied upon proof that could not possibly establish by clear and convincing evidence" that Petitioner is a flight risk. *Id.* The clear-and-convincing burden of proof "requires the government to prove that a factual contention is highly probable." *Hechavarria*, 358 F. Supp. 3d at 240 (internal quotation marks omitted).

The Court concludes that Immigration Judge Baumgarten complied with its Decision and Order. The record of the hearing shows that she reviewed the evidence, heard arguments from both sides, and came to a legally permissible conclusion in light of the available evidence. In other words, one could reasonably infer from the record that Petitioner's risk of flight is highly probable: Petitioner has no family ties in the United States; he committed fraud to obtain a visa and immediately proceeded to Canada once he entered the United States; and he is now the subject of an administratively final removal order. And, contrary to Petitioner's claim, his initial visa fraud was not the sole evidence which the government proffered and on which Immigration Judge Baumgarten relied. Rather, Immigration Judge Baumgarten explicitly reasoned that changed circumstances justified continued detention: because Petitioner is "the subject of a final removal

order," he is "in a very different position from when bond of $12,000 initially was set." ECF No. 17 at 58.

Immigration Judge Baumgarten also considered and reasonably rejected Petitioner's contrary evidence. Although numerous individuals and organizations offered their support to Petitioner, they had no direct family ties to him and many were strangers who could not vouch for his ability to comply with conditions of release. Moreover, Immigration Judge Baumgarten was reasonably concerned about the two religious communities' offers, given the inconsistencies in their letters and how Petitioner had previously used his religious affiliation to fraudulently obtain a visa.

In short, this is not a case where an immigration judge failed to rely on record evidence in making a bond determination, *see Enoh*, 2017 WL 2080278, at *8-9, or chose to rely on speculation. *See Hechavarria*, 358 F. Supp. 3d at 241. Immigration Judge Baumgarten reviewed the record, identified the conflicting evidence, and reasonably resolved the conflicts to reach a conclusion. While Petitioner may disagree with her resolution of the factual disputes, there was sufficient evidence for Immigration Judge Baumgarten to find, by clear and convincing evidence, that Petitioner is a flight risk.[1] Accordingly, Respondent complied with the Court's previous Decision and Order, and Petitioner is not entitled to relief.

---

[1] Petitioner also claims that other procedural irregularities affected the proceedings. *See* ECF No. 10 at 4, 7. The Court has reviewed the record and concludes that Petitioner's claims either do not find support in the record or do not justify relief.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for relief (ECF No. 10) is DENIED.

IT IS SO ORDERED.

Dated: August 26, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court